UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SONIA PRITCHETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.  2:20-cv-01733-AKK |
| | ) |
| **HEAT TRANSFER PRODUCTS** | ) |
| **GROUP, LLC,** | ) |
| | ) |
| **Defendant**. | ) |

## MEMORANDUM OPINION AND ORDER

Sonia Pritchett brings this action against her employer Heat Transfer Products Group, LLC, for alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). Doc. 1. Specifically, she pleads hostile work environment and retaliation claims. *Id.* at 1. Heat Transfer Products has moved to dismiss under Fed. R. Civ. P. 12(b)(6). Doc. 5. Although the court finds Pritchett's hostile work environment claim adequately pleaded, the court agrees that Pritchett fails to state a claim for retaliation. But consistent with Pritchett's request in her opposition brief for leave to amend, *see* doc. 10 at 3, and the court's duty to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), in lieu of dismissal, the court will afford Pritchett leave to amend her complaint to address the deficiencies described below.

## I.

Pritchett, an African American woman, began working for Heat Transfer Products in early 2018. Doc. 1 at 4. She alleges that, in October 2019, a white coworker, Jack Windsor, told a white female coworker that he disliked Pritchett and African Americans because "niggers act as if they are owed something." *Id.* at 5. After Pritchett and the other coworker reported Windsor to management, the coworker heard Windsor threaten to kill Pritchett, *id.*, prompting Pritchett to file a police report. *Id.* In addition to threatening Pritchett, Windsor has allegedly "thrown a piece of copper in Pritchett's direction and [swept] trash into her area" in response to her complaints of harassment. *Id.* In light of Heat Transfer Products' purported failure to address Windsor's conduct, Pritchett alleges she works in "constant fear" that Windsor will "harm her or cause her to lose her job." *Id.*

## II.

When reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although "detailed factual allegations" are not required, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.

Pritchett pleads three counts: racial harassment in violation of § 1981; retaliation in violation of Title VII and § 1981; and racial harassment in violation of Title VII. Because the same analytical framework applies to both the § 1981 and Title VII counts alleging racial harassment, the court will consider those claims together while explicitly addressing only the Title VII claim. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The same framework also applies to both retaliation claims. *See id.*

### A.

To plead a racial harassment claim based on a hostile work environment, Pritchett must allege: (1) that she belongs to a protected group; (2) that she has experienced unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was so severe or pervasive that it altered the terms and conditions of employment and created a discriminatorily abusive working environment; and (5) that the employer is either directly or vicariously responsible for such environment. *Miller v. Kenworth of Dothan, Inc.*,

3

277 F.3d 1269, 1275 (11th Cir. 2002).  A viable hostile work environment claim requires evidence that the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

The parties dispute the fourth element, which requires Pritchett to "prove that [her] work environment is both subjectively and objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014).  In other words, Pritchett must "subjectively perceive" that the harassment is "sufficiently severe and pervasive to alter the terms or conditions of employment," and the harassment must be objectively severe as "judged from the perspective of a reasonable person in [her] position, considering all the circumstances." *Id.* (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)).  When evaluating whether a work environment is objectively hostile, the court considers four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1250–51 (quoting *Mendoza*, 195 F.3d at 1246).

The thrust of Heat Transfer Products' argument is that a coworker's use of a single racial epithet, without more, would not lead a reasonable person to believe that her work environment is hostile. Doc. 5 at 6–12. True, the "occasional use, by itself, of even the most incendiary epithets fails to result in actionable conduct." *Garrett v. Tyco Fire Prod., LP*, 301 F. Supp. 3d 1099, 1119 (N.D. Ala. 2018). But Pritchett has alleged more than the utterance of a single slur. She also alleges that Windsor threatened to kill her, threw an object at her, and swept trash into her area, after she reported him for making a racist remark. Doc. 1 at 5–6. And while Heat Transfer Products is correct, in part, that Pritchett did allege that her "complaint of racial harassment" was the "but for" cause of "the retaliation she suffered," doc. 1 at 8, it overlooks that Pritchett alleged that the alleged threat was based also on her race. In particular, in Count I, the first harassment claim, Pritchett alleged that she "has been racially harassed . . . because of her race." *Id.* at 6. "Specifically," Pritchett continued, "[she] was referred to as a 'nigger' by a white co-worker and then threatened with physical violence, murder and intimidation." *Id.* Pritchett concludes that but for her race, "she would not have suffered said acts of racial harassment." *Id.* She then realleged those statements by reference in Count III, her second harassment claim, where she also says that race was a "motivating factor" of the discrimination she faced. *Id.* at 9–10.

Further tying the alleged conduct to her race, she contends that although she and another coworker—a white woman—jointly reported Windsor for making racist remarks, Windsor threatened to kill Pritchett only. Doc. 1 at 5. In other words, Windsor threatened Pritchett for conduct that a white coworker also engaged in, but he did not similarly threaten the white coworker. Thus, construing the facts in Pritchett's favor, it is plausible that Windsor's threat was at least in part racially-motivated.[1]

Additionally, Pritchett's allegation that her complaint was the determinative cause of the threat does not sink her harassment claim. Different causation standards apply to claims for status-based discrimination and employer retaliation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To succeed with a retaliation claim, a plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* In contrast, a "lessened causation test" applies to status-based discrimination claims, such as Pritchett's claim for racial harassment. *Id.* "An employee who alleges status-based discrimination under Title VII need not show that the causal link

---

[1] In that respect, *Gooden v. Internal Revenue Service*, 679 F. Appx. 958 (11th Cir. 2017), which Heat Transfer Products cites and where the plaintiff "specifically alleged" that the harassment she suffered was an "attempt at deterring her future protected activity," *id.* at 966, is distinguishable. Based on the *Gooden* plaintiff's own contentions, the Circuit refused to consider the alleged harassment claim because "even she acknowledge[d] it was not based on race, gender, or disability." *Id.*

between injury and wrong is so close that the injury would not have occurred but for the act." *Id.* at 343. Instead, it is enough "to show that the motive to discriminate was one of the employer's motives." *Id.* And, at any rate, the court cannot ignore that, although Windsor's purported conduct was retaliatory, Pritchett pleads also that Windsor directed this conduct at her because of her race. "Workplace conduct is not measured in isolation. Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (citation and quotation omitted).

Viewing all of Windsor's alleged conduct, including the death threat, and recognizing that "[a] plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at her," *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995), the court finds that Pritchett adequately pleaded a hostile work environment. Admittedly, the incidents of alleged harassment are few, consisting of four discriminatory acts. But this conduct was not necessarily infrequent, as it appears to have all occurred soon after Windsor allegedly used a slur in October 2019, *see* doc. 1 at 5, and over five months, *see* doc. 2 at 2. While one can quibble about some of the alleged conduct, there is no doubt that "the use of the slur 'nigger' is severe." *Adams*, 754 F.3d at 1255. Further, the alleged threat to kill her prompted Pritchett to file a police report and placed her in constant fear.

"[P]hysically threatening or humiliating" conduct can contribute to a hostile work environment.  *Id.* at 1251 (quoting *Mendoza*, 195 F.3d at 1246).  Indeed, "[h]arassment that reasonably can be construed as a physical threat, even when infrequent, carries much weight in the hostile work environment context." *Washington v. Util. Trailer Mfg. Co.*, No. 1:13-CV-610-WKW, 2017 WL 924469, at *4 n.8 (M.D. Ala. Mar. 8, 2017).  And, of course, Pritchett's decision to file a police report and the constant fear that Windsor may carry out his threat establish that the alleged conduct unreasonably interferes with Pritchett's job performance. *See Adams*, 754 F.3d at 1250–51.

Whether these allegations will establish the severe or pervasive requirement to survive summary judgment is a matter for another day.  At this juncture, however, "[a] complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss." *Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1193 (N.D. Ala. 2019) (quoting *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011)).  Therefore, because Pritchett has pleaded sufficient facts to support her hostile environment claim, the motion to dismiss is due to be denied as to those claims.

**B.**

The court next considers Pritchett's retaliation claims. As an initial matter, she apparently asserts a retaliation claim based on retaliation and a separate one based on a retaliatory hostile work environment. *See* doc. 10 at 8 ("The Plaintiff has sufficiently pleaded a retaliation claim and a retaliatory hostile environment claim."). In her complaint, Pritchett failed to separate these claims into different counts or otherwise differentiate the facts relevant to each. *See* doc. 1 at 7–9. Nonetheless, the court will analyze the complaint as written because the same standard applies to both retaliation and retaliatory hostile work environment claims brought under Title VII. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020).

To state a retaliation claim, Pritchett must allege that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the alleged protected activity and the adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). Title VII prohibits employers from retaliating against an employee who either "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* (quoting 42 U.S.C. § 2000e–3(a)). Pritchett is

proceeding on the opposition clause, stating that she satisfied the protected activity element "[b]y reporting the use of a racial slur and subsequently reporting race based harassment." Doc. 10 at 10.

To establish statutorily protected activity under Title VII's opposition clause, Pritchett must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard*, 605 F.3d at 1244 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). In other words, her belief must be "*objectively* reasonable in light of the facts and record present." *Id.* (emphasis in original). Although Heat Transfer Products need not have unlawfully discriminated against its employees in fact, the reasonableness of Pritchett's belief that it did so "must be measured against existing substantive law." *Id.* (quoting *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, . . . an employee's contrary belief that the practice is unlawful is unreasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).

Heat Transfer Products says that Pritchett has inadequately alleged that she engaged in statutorily protected activity because, even accepting her allegations as true, Pritchett never complained about unlawful discrimination. Doc. 5 at 16.

Pritchett responds that she engaged in statutorily protected activity "[b]y reporting the use of a racial slur and subsequently reporting race based harassment." Doc. 10 at 10. It is unclear whether Pritchett argues that her actions constituted two separate incidents of protected activity or a single incident. To the extent that she alleges two incidents of protected activity, the court agrees with Heat Transfer Products that the first incident—reporting Windsor for using a racial slur—is not enough. Eleventh Circuit precedent holds that "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII." *Little*, 103 F.3d at 961. "[O]pposition to such a remark, consequently, is not statutorily protected conduct." *Id.* It was thus unreasonable for Pritchett to believe otherwise. *See Butler*, 536 F.3d at 1214.

Pritchett's second alleged incident of protected activity occurred when she reported Windsor for threatening to kill her, throwing a piece of copper at her, and sweeping trash into her work area. *See* docs. 1 at 5; 10 at 10. Although the complaint could be clearer on whether Pritchett reported Windsor's threat to management, Pritchett does plead that she complained about Windsor's "retaliatory and intimidating conduct" sometime after she learned of his threat. Doc. 1 at 5. Moreover, Pritchett alleged in her EEOC charge that she went to the police only after she reported the threat to management and her "employer did nothing." Doc. 1-1 at 2. Thus, construing the facts in Pritchett's favor, the court finds that Pritchett

11

reported the threat to her supervisors. And as explained above, Pritchett has adequately stated a hostile work environment claim based on Windsor's threat, use of a slur, and other harassing conduct. Accordingly, it was reasonable for Pritchett to believe that Heat Transfer Products had engaged in an unlawful employment practice.

Even so, Pritchett's allegations regarding the second element of a *prima facie* case are deficient. To satisfy this element, Pritchett must plausibly allege that she suffered a materially adverse employment action. *Howard*, 605 F.3d at 1244. An employment action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting" a discrimination charge. *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Pritchett alleges two adverse employment actions: the death threat and Heat Transfer Products' failure to take remedial steps after Pritchett reported Windsor's further harassment. *See* docs. 1 at 8; 10 at 10.

The alleged death threat was not an adverse employment action. To begin, the pleadings lack any basis for plausibly concluding that Heat Transfer Products knew that Windsor's racist remark would escalate into a threat against Pritchett's life. It is thus unlikely that Heat Transfer Products could be held liable under

Eleventh Circuit law.² Moreover, even assuming Heat Transfer Products could be held liable for Windsor's threat, his conduct would still not constitute an adverse employment action. As explained above, Pritchett had not engaged in statutorily protected activity before Windsor made the threat. Thus, there was nothing to retaliate against. *See Little*, 103 F.3d at 961.

Nor does the alleged failure to take corrective action show a materially adverse employment action to support the retaliatory hostile work environment claim. Pritchett's argument, it seems, is that by failing to act, Heat Transfer Products condoned a hostile work environment in retaliation against her. To support this contention, Pritchett provides only a footnote in her response brief, doc. 10 at 8 n.3, citing the Eleventh Circuit's recent opinion in *Babb v. Secretary, Department of Veterans Affairs*, 2021 WL 1219654 (11th Cir. Apr. 1, 2021), which recognized that another recent Circuit opinion, *Monaghan v. Worldpay US, Inc.*, "reaffirm[ed] that the standard applicable to *all* Title VII retaliation claims"—i.e., claims for both

---

² Pritchett contends that whether her employer condoned or ratified Windsor's conduct "is clearly a fact question." *See* doc. 10 at 10. The Eleventh Circuit has not addressed when or if an employer may be held liable under Title VII for coworker retaliation. *See Terrell v. Paulding Cty.*, 539 F. App'x 929, 933–34 (11th Cir. 2013) ("We have not explicitly recognized retaliatory co-worker harassment as an 'adverse employment action' for retaliation purposes."). The Circuit has, however, approvingly cited the Tenth Circuit's approach in *Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998). *See Booth v. Pasco Cty., Fla.*, 757 F.3d 1198, 1208 (11th Cir. 2014) (upholding a jury instruction based on *Gunnell*). Under *Gunnell*, employer liability for a co-worker's retaliatory harassment is limited to circumstances where the employer's "supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." 152 F.3d at 1265.

retaliation and retaliatory hostile work environment—"is the *Burlington Northern* 'well might have dissuaded' standard." *Babb*, 2021 WL 1219654, at *11 (emphasis in original) (quoting *Monaghan*, 955 F.3d at 862).[3]

Pritchett's reliance on *Babb*, *Monaghan*, and *Gowski* is misplaced. In each case, the alleged harassment took the form of an employer's affirmative retaliatory conduct after a plaintiff engaged in protected activity.[4] Pritchett, in contrast, pleads a retaliation or retaliatory hostile work environment claim based on inaction. She explicitly observes that "after she reported [Windsor's] further harassment nothing was done." Doc. 10 at 10. The court is not aware of, and Pritchett does not cite, any cases allowing a Title VII retaliation or retaliatory hostile work environment claim based solely on the employer purportedly failing to respond to protected activity. Instead, courts in this Circuit have held that a plaintiff generally "cannot rely on [her] employer's] failure to take action against another employee to show that [s]he was

---

[3] *Monaghan*, in turn, "effectively overruled" an earlier Circuit opinion, *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012), which applied a more onerous "severe-or-pervasive" standard to retaliatory hostile work environment claims. *Babb*, 2021 WL 1219654, at *10.

[4] *Babb* concerned a pharmacist whose employer made her ineligible for promotion, denied her training opportunities, and transferred her to a new position with reduced holiday pay after she filed an EEOC charge. 2021 WL 1219654, at *2. In *Monaghan*, the plaintiff's supervisor responded to the plaintiff's complaints of discrimination by threatening termination and physical harm, and then actually terminating the plaintiff. 955 F.3d at 862. Finally, in *Gowski*, two doctors complained that, after they filed EEOC complaints, hospital administrators subjected them to a retaliatory hostile work environment by, among other things, changing their work assignments, removing them from leadership positions, reprimanding them, and limiting their privileges. 682 F.3d at 1304.

subject to an adverse employment action." *Wesolowski v. Napolitano*, 2 F. Supp. 3d 1318, 1348 (S.D. Ga. 2014) (citing *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010)).[5]

Moreover, Pritchett has not alleged that she has experienced any additional harassment after she reported Windsor's threat and related conduct. *See* doc. 1 at 5. Instead, Pritchett alleges only that she now "works in constant fear" that Windsor will "harm her or cause her to lose her job." *Id.* That allegation, however, is not enough to show that her employer's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington*, 548 U.S. at 68). Accordingly, Pritchett has inadequately pleaded a retaliation claim.

## IV.

To close, Pritchett has sufficiently pleaded a hostile work environment claim but failed to state a claim for retaliation of any sort. However, the court declines to dismiss her retaliation claim at this point because Pritchett has sought leave to amend. *See* doc. 10 at 3. Therefore, because the court must "freely give leave" to

---

[5] *See also Zwick v. Univ. of S. Fla. Bd. of Trustees*, No. 8:18-CV-1575-T-23AAS, 2020 WL 8996830, at *11 n.16 (M.D. Fla. Apr. 6, 2020) ("Nor can dissatisfaction with an investigation constitute an adverse employment decision.") (citing *Entrekin*, 376 F. App'x at 995); *Hilliary v. FlightSafety Int'l, Inc.*, No. 1:17-CV-999-AT, 2018 WL 8799303, at *12 (N.D. Ga. Aug. 17, 2018) ("[F]ailures to investigate and discipline other employees are not typically adverse employment actions because they are not actions directed at the plaintiff.") (citing *Entrekin*, 376 F. App'x at 995).

15

amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), to the extent Pritchett believes she can plead a plausible retaliation claim, Pritchett has until **May 28, 2021**, to file an amended complaint.  The court will treat the failure to file an amended complaint as a decision to abandon her retaliation claims.  For now, Heat Transfer Products' motion to dismiss, doc. 5, is **DENIED**.  And, consistent with the court's uniform initial order,[6] pp. 20–21, Heat Transfer Products must confer with Pritchett before filing a motion to dismiss to give her an opportunity to amend the complaint if it believes the factual allegations in the amended complaint, if any, remain deficient.  Heat Transfer Products may file a new motion to dismiss after conferring with Pritchett to give her an opportunity to address the alleged deficiencies in her amended complaint, if any.

     **DONE** the 21st day of May, 2021.

                                                  _____
                                                  **ABDUL K. KALLON**
                                          UNITED STATES DISTRICT JUDGE

---

[6] The court's uniform initial order is available at https://www.alnd.uscourts.gov/content/judge-abdul-k-kallon.